**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| ANTHONY LEBLANC | CIVIL ACTION |
| VERSUS | NUMBER: 2:11-cv-01668 |
| AEP ELMWOOD, LLC AND DIAMOND L SERVICES, INC. | SECTION "B" |

**ORDER AND REASONS**

Before the Court is Plaintiff Anthony Leblanc's (Plaintiff) Motion to Remand (Rec. Doc. No. 9) this case to the 23rd Judicial Court for the Parish of St. James. In response, Defendant AEP Elmwood LLC (AEP) filed its Opposition Memorandum to Plaintiff's Motion to Remand (Rec. Doc. No. 15). Additionally, Defendant Diamond L Services Inc. (Diamond L) filed its Opposition to Plaintiff's Motion to Remand (Rec. Doc. No. 16). Accordingly, and for the reasons articulated below,

**IT IS ORDERED** that Plaintiff's Motion to Remand is **DENIED.**[1]

**PROCEDURAL HISTORY**

Plaintiff was hired by Diamond L[2] in 2009 and was assigned to be a barge washer at AEP's[3] St. James Parish/Mississippi River

---

[1] We are grateful for the work on this case by Elizabeth Etherton, a Tulane Law School extern with our chambers.

[2] Diamond L is a Louisiana company with its principal place of business in the state of Louisiana. *See* Diamond L's Certificate of Good Standing from the Louisiana Secretary of State (Rec. Doc. No. 9-2 at 10).

[3] AEP is a business incorporated in Delaware, and its principal place of business is in Ohio. (Rec. Doc. No. 1 at 2).

facility. (Rec. Doc. No. 9-1 at 2). The barges in question were "never fixed to the river bed," but instead were "afloat and transient" while Plaintiff was an employee. *Id.* The barge-cleaning crew members were responsible for removing "algae, dirt, grease, and other foreign substances from the barges." *Id.* at 3.

On May 21, 2010, Plaintiff was part of a three-person cleaning crew with two other AEP workers. *Id*. Plaintiff was assigned to work on the top of the barge's cover; his role was "to lower a high-pressure hose through an open hatch on the top of the cover, down to one of the AEP employees on the (lower) deck of the barge." *Id.* at 4. Plaintiff claims that he was thrown off balance when the hose was turned on without warning, that he fell "approximately 20 to 25 feet" through an open hatch to the barge's deck, and that he suffered "severe and debilitating injuries to his head and body" as a result. *Id.* Plaintiff argues that this incident

> [W]as the result of the negligence of the AEP employee for not communicating that he was turning the hose on, failure by AEP and Diamond L to even provide radios for communication, the negligence of the AEP supervisor who oversaw this unsafe operation, and the failure of AEP and Diamond L to provide adequate training, safety measures, a safe working environment, and a seaworthy vessel.

(Rec. Doc. No. 9-1 at 4).

This lawsuit was filed in the 23rd Judicial District Court for the Parish of St. James, Louisiana, under the Saving to Suitors Clause, 28 U.S.C. § 1333(1) on June 17, 2011. (Rec. Doc. No. 1 at

2

1). On July, 17, 2011, AEP removed this case "as a matter involving citizens of different States over an amount in controversy that exceeds the sum of $75,000.00." *Id.* at 2. Plaintiff filed the instant Motion to Remand on August 5, 2011. (Rec. Doc. No. 9). AEP countered with its Opposition Memorandum to Plaintiff's Motion to Remand on September 2, 2011. (Rec. Doc. No. 15). Diamond L filed its Opposition to Plaintiff's Motion to Remand on September 6, 2011. (Rec. Doc. No. 16). On November 2, 2011, all parties filed a Joint Motion to Statistically Close the Case. (Rec. Doc. No. 39). On February 6, 2011, Plaintiff requested that the case be re-opened and the original Motion to Remand be decided by this Court. (Rec. Doc. No. 41-1 at 1-2).

## CONTENTIONS OF MOVANT

Plaintiff asserts that this case should be remanded to state court because AEP cannot demonstrate removal was proper in the instant suit.(Rec. Doc. No. 9 at 1). Specifically, Plaintiff alleges that there is no diversity jurisdiction because there are proper claims against Diamond L. (Rec. Doc. No. 9-1 at 1). Plaintiff also claims that, since there is a "reasonable possibility of establishing a Jones Act claim" against both Defendants, the matter should be returned to state court "where it was properly filed in the first instance." *Id.* at 2.

## CONTENTIONS OF RESPONDENTS

**1. AEP**

AEP claims that "Plaintiff has fraudulently joined his direct employer, [Diamond L], in an attempt to avoid removal." (Rec. Doc. No. 15 at 1). AEP further asserts that Plaintiff is not entitled to coverage under the Jones Act because he was employed "as a shore-based barge washer, not a seaman." *Id.* at 1-2. Therefore, the alleged incident would be governed by the Longshore Act.[4] *Id.* at 2. AEP claims that the only relevant claims remaining under 28 U.S.C. § 1332(a)(1)[5] are against AEP, who is a diverse defendant, and the amount in controversy exceeds $75,000 in the instant case. *Id.* Because of this, AEP argues that remand is improper. Finally, AEP asserts that the motion to remand should be denied because "Plaintiff has no possibility of proving Jones Act seaman status on the merits of the case." *Id.* at 2.

**2. Diamond L**

Diamond L claims that the "Jones Act causes of action were fraudulently pleaded so that Diamond L could be fraudulently joined in order to defeat diversity jurisdiction." (Rec. Doc. No. 16 at 1). In its Opposition to Plaintiff's Motion to Remand, Diamond L asserts that "it is not a proper party" in the instant suit. *Id.* at

---

[4] The Longshore Act is codified at 33 U.S.C. §§ 901-950 (2006).

[5] 28 U.S.C. § 1332(a)(1) provides that "t[]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States." 28 U.S.C. § 1332(a)(1) (2006).

4

2. Diamond L argues that Plaintiff cannot qualify as a Jones Act seaman because he "lacks a connection to [the] vessel (or an identifiable group of vessels) that is sufficiently substantial in terms of both its duration and its nature." *Id*. at 3.

## LAW AND ANALYSIS

**1. Standard of Review**

   **A. Removal Jurisdiction**

The Supreme Court has noted an exception to the general right to removal for admiralty cases: if a lawsuit is brought in state court, and it could have been brought in federal court under 28 U.S.C. § 1333, the case may not be removed if § 1333 is the only basis for federal jurisdiction. *Romero v. Int'l Terminal Operating Co.*, 358 U.S. 354, 371-72 (1959). Plaintiffs that exercise their option to file in state court can keep their court in state court unless there is diversity of citizenship or another statutory basis besides § 1333 that qualifies the lawsuit for federal jurisdiction. Further, the Fifth Circuit has held that cases brought under the Jones Act are generally not removable. *Holmes v. Atl. Sounding Co.*, 437 F.3d 441, 445 (5th Cir. 2006)(citing *Burchett v. Cargill, Inc.*, 48 F.3d 173, 175 (5th Cir. 1995)).

The exception to this is if a plaintiff fraudulently pleads a Jones Act claim in an effort to prevent federal jurisdiction. *Id*. (citing *Burchett*, 48 F.3d at 175). In that instance, a defendant is

permitted to "pierce the pleadings to show that the Jones Act claim has been fraudulently pleaded to prevent removal." *Lackey v. Atl. Richfield Co.*, 990 F.2d 202, 207 (5th Cir. 1993). A court "may deny remand where, but only where, resolving all disputed facts and ambiguities in current substantive law in plaintiff's favor, the court determines that the plaintiff has no possibility of establishing a Jones Act claim on the merits." *Hufnagel v. Omega Serv. Indus., Inc.*, 182 F.3d 340, 345-46 (5th Cir. 1999)(citing *Burchett*, 48 F.3d at 176). The burden of persuasion "rests with the removing party, and this burden is a heavy one." *Zertuche v. Great Lakes Dredge & Dock Co., LLC,* 306 F. App'x 93, 94 (5th Cir. 2009)(citing *Burchett*, 48 F.3d at 176).

    **B. Jones Act**

    The Jones Act provides that "[a] seaman injured in the course of employment or, if the seaman dies from the injury, the personal representative of the seaman may elect to bring a civil action at law, with the right of trial by jury, against the employer." 46 U.S.C. § 30104 (2006). An action under the Jones Act may be properly brought in either a federal court or a state court. *See, e.g., Madruga v. Superior Ct. of State of Cal. in & for San Diego Cty.*, 346 U.S. 556, 560 (1954); 28 U.S.C. § 1333(1) (2006).

    The United States Supreme Court defined a benchmark for determining whether or not an employee qualifies as a "seaman" under the Jones Act in *Chandris, Inc. v. Latsis*, 515 U.S. 347

(1995). The Court noted that Jones Act jurisdiction is not contingent "on the place where the injury is inflicted;" rather, it is dependent on the "nature of the seaman's *service*, his *status* as *a member of the crew*, and his relationship as such to the vessel and its operation in navigable waters." *Id.* at 559-60 (quoting *Swanson v. Marra Brothers, Inc.*, 328 U.S. 1,4 (1946))(emphasis added). There are two criteria recognized for an employee to qualify as a seaman under the Jones Act. First, "an employee's duties must contribute to the function of the vessel or the accomplishment of its mission." *Id.* at 368 (internal citations omitted). This is a broad threshold: "'all who work at sea in the service of a ship' are eligible for seaman status." *Id.* (quoting *McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 354 (1991)). Second, a seaman's connection to the vessel must be "substantial in terms of both its duration and its nature." *Id.*

The total circumstances surrounding employment "must be weighed to determine whether he had a sufficient relation to the navigation of vessels and the perils attendant therein." *Wallace v. Oceaneering Int'l*, 727 F.2d 427, 432 (5th Cir. 1984). The Court held that the "ultimate inquiry" when determining Jones Act coverage is "whether the worker in question is a member of the vessel's crew or simply a land-based employee who happens to be working on the vessel at a given time." *Chandris*, 515 U.S. at 369.

The Court found that the Fifth Circuit applied an "appropriate rule of thumb" for ordinary cases: "A worker who spends less than about 30 percent of his time in the service of a vessel in navigation should not qualify as a seaman under the Jones Act." *Id.* at 371; *see also Barrett v. Chevron, U.S.A., Inc.*, 781 F.2d 1067 (5th Cir. 1986)(establishing the use of percentages as the basis for Jones Act qualification).

### C. Savings to Suitors Clause

28 U.S.C. § 1333 provides that federal courts will have exclusive jurisdiction in "[a]ny civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled." 28 U.S.C. § 1333(1) (2006). However, the Supreme Court affirmatively stated that this jurisdiction "is 'exclusive' only as to those maritime causes of action begun and carried on as proceedings in rem." *Madruga v. Superior Ct. of State of Cal. in & for San Diego Cty.*, 346 U.S. 556, 560 (1954). Therefore, in personam proceedings can be properly filed in a state court where there is jurisdiction. *See id.*

### 2. Plaintiff is Not a Proper Jones Act Plaintiff Because he Cannot Prove that he is a "Seaman"

The matter of remand to state court hinges on whether or not Plaintiff is a proper seaman under the Jones Act. It has been acknowledged by the Supreme Court that not all who work upon a vessel are "seamen." *McDermott Int'l v. Wilander*, 498 U.S. 337,

347-48 (1991). The Court has stated that a plaintiff must demonstrate two factors to qualify as a seaman: (1) that his duties contribute to either the function of a vessel or the accomplishment of its mission; and (2) that he has a connection to a vessel in navigation that is substantial in terms of its duration and its nature. *Chandris,* 515 U.S. at 368. Neither AEP nor Diamond L argue that the barge in question is a vessel for the purposes of the Jones Act. (Rec. Doc. No. 15 at 2-3; Rec. Doc. No. 16 at 3). Therefore, the pertinent question is whether or not Plaintiff is substantially connected to a vessel.

The Supreme Court has dealt with the "substantial connection" requirement in multiple cases. First, in *Chandris*, the Court stressed that the "'the total circumstances of employment'" must be considered in determining whether or not a sufficient relationship existed. 515 U.S. at 370 (quoting *Wallace v. Oceaneering Int'l*, 727 F.2d 427, 432 (5th Cir. 1984)). Later, in *Harbor Tug & Barge Co. v. Papai*, 520 U.S. 548 (1997), the Court held that "[f]or the substantial connection requirement to serve its purpose, the inquiry into the nature of the employee's connection to the vessel must concentrate on whether the employee's duties take him to sea." 520 U.S. at 555. The Fifth Circuit has consistently held that the percentage of work done on a vessel is indicative of whether or not an employee is a seaman. *See, e.g., Barrett v. Chevron, U.S.A.,* 781 F.2d 1067, 1076 (5th Cir. 1986). The Supreme Court endorsed this

method in *Chandris*, holding that "[a] worker who spends less than 30 percent of his time in the service of a vessel in navigation should not qualify as a seaman under the Jones Act." 515 U.S. at 371.

In the instant case, both AEP and Diamond L assert that Plaintiff had no substantial connection to a vessel at the time of the his injury. (Rec. Doc. No. 15 at 2; Rec. Doc. No. 16 at 3). Conversely, Plaintiff argues that he has a substantial connection because "[i]n the seven months that [he] worked for Diamond L and AEP on AEP's barges, all of his work was performed on AEP's barges." (Rec. Doc. No. 9-1 at 12).

In *Papai*, the Court ruled on an analogous situation to the one in the instant case. The plaintiff in *Papai* was injured while performing maintenance work on a tug boat. 520 U.S. at 548. In that case, the Court held that Jones Act coverage is restricted to those who "face regular exposure to the perils of the sea." *Id.* at 549. The Court found that the plaintiff did not qualify for Jones Act coverage because "[s]eaman status is based on his actual duties, and Papai's duties during the employment in question included no seagoing activity." *Id.*

In the instant case, Plaintiff's duties involved cleaning "barges that were not permanently moored and were afloat on the river." (Rec. Doc. No. 9-1). He argues that he was exposed to the perils of the sea because "[d]rowning is a peril of a seaman on a

10

vessel [and he] may have drowned had he fallen overboard." (Rec. Doc. No. 9-1 at 13). He further references *In re Endeavor Marine*, 234 F.3d 287 (5th Cir. 2000), where the Fifth Circuit held that a crane operator was a Jones Act seaman as a matter of law even though he did not literally go to sea in the course of his employment.[6] 234 F.3d at 291-92.

Defendants counter Plaintiff's argument by arguing that the danger of drowning if one fell overboard is not a "peril of the sea." (Rec. Doc. No. 16 at 11). Diamond L argues instead that "perils of the sea" are those which are "peculiar to seamen's work": "the need to fight fires onboard a vessel without outside assistance, the need to abandon ship, the need to survive exposure to the elements until help arrives, and the possibility of significant delay in receiving hospital attention in a medical emergency." *Id.* (citing *Lara v. Arctic King Ltd.*, 178 F.Supp 2d 1178, 1182 (W.D. Wash. 2001)). Diamond L also asserts that

---

[6] In *In re Endeavor Marine*, there were three reasons that supported the Fifth Circuit's decision:
> First, Baye was permanently assigned to the FRANK L and, as mentioned above, had spent almost all of the prior eighteen months on the vessel. Second, Baye's primary responsibility was to operate the cranes on board a vessel whose sole purpose is to load and unload cargo vessels.[4] Third, in the course of his employment, Baye was regularly exposed to the perils of the sea.

234 F.3d 287, 292 (5th Cir. 2000)

Plaintiff was never required to undergo required Coast Guard training for those workers who are "regularly exposed to the perils of the sea." *Id.*

The United States District Court for the Western District of Kentucky faced this issue in *Denson v. Ingram Barge Co.*, 2009 WL 1033817 (W.D. Ky. 2009). There, the court found that Denson, a barge cleaner, "was not a seaman because his duties did not expose him to the perils of the sea." *Id.* While Denson asserted multiple perils that he faced in the course of his job,[7] the Western District of Kentucky found that these dangers, like the ones asserted by Plaintiff in the instant case, were the same as "those faced by longshoremen who load and unload barges at docks everyday, not special maritime hazards or disadvantages that seamen face." *Id.* Plaintiff in the instant case similarly was assigned to work at a dock, "cleaning barges that were moored to that dock." (Rec. Doc. No. 16-1 at 2).

---

[7] These hazards included:
(1) the dangers associated with the movement of the vessels in the water as a result of the movement of the water generally and from wind; (2) trip-and-fall hazards associated with walking on the decks of the barges due to the presence of deck fittings, ratchets, and rigging, and slip hazzards caused by inclement weather; (3) hazards of falls overboard while exposed to the river; (4) dangers of walking from barge to barge in the fleet; and (5) dangers of injury while handling lines.
*Denson v. Ingram Barge Co.*, 2009 WL 1033817 (W.D. Ky. 2009)

In the instant case, the facts surrounding Plaintiff's duties preclude a finding that he was a seaman as required by the Jones Act. He was "not a member of the crew of any vessel, would never sail with the barge once his washing duties were completed, and did not sleep or take his meals upon any barge, as members of a vessel's crew typically would." (Rec. Doc. 16-1 at 2). As such, Plaintiff failed to demonstrate how his duties contribute to the function of the vessel or how his connection to the vessel is substantial in both its nature and duration. *See Swanson v. Marra Brothers, Inc.*, 328 U.S. 1, 4 (1946). At bottom, Plaintiff cannot prove he is a seaman pursuant to the Jones Act. Furthermore, it is recognized that a plaintiff may allege Jones Act eligibility to prevent removal to a federal court. *See Holmes v. Atlantic Sounding Co., Inc.*, 437 F.3d 441, 445 (5th Cir. 2006). ("Generally, Jones Act cases are not removable from state court.). However, "a fraudulently pleaded Jones Act claim does not, however, bar removal." *Id*. Thusly, the Court recognizes that it may deny remand when the "plaintiff has no possibility of establishing a Jones Act claim on the merits." *Id*. Such is the instant case and, thus, remand on this issue is improper.

Moreover, the Court recognizes that Plaintiff signed a workers' compensation agreement from Diamond L. (Rec. Doc. No. 16, Exh. 2; Rec. Doc. No. 16, Exh. A, Wayne Ledet Aff.). Injured maritime employees may not recover under both the Jones Act and the

13

Longshore and Harbor Workers' Compensation Act ("LHWCA"), as Congress "explicitly den[ied] a right of recovery under the Jones Act to maritime workers not members of a crew who are injured on board a vessel." *Chandris*, 515 U.S. at 359. Plaintiff was not a seaman in this instance and, thus, the workers' compensation agreement he signed precludes him from recovering under the Jones Act. Furthermore, Diamond L concedes that it carried LHWCA insurance for its employees and made a claim for Plaintiff pursuant to that policy upon his injury. (Rec. Doc. No. 16, at 13). As such Plaintiff's Jones Act claim against Diamond L is improper, and without Diamond L's presence, diversity jurisdiction is appropriate. Plaintiff is a resident of Louisiana and AEP is a business incorporated in Delaware with its principal place of business in Ohio, and there is an amount in controversy of over $75,000.00 (Rec. Doc. No. 1). Accordingly, remand on this issue is improper.

## CONCLUSION

Given that Plaintiff cannot affirmatively prove that he is a seaman under the Jones Act, **IT IS ORDERED** that this motion to remand **is DENIED**.

New Orleans, Louisiana, this 28th day of February, 2012.

_____

UNITED STATES DISTRICT JUDGE