```
                UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF LOUISIANA
```

**ANTHONY LEBLANC**                                                **CIVIL ACTION**

**VERSUS**                                                          **NO. 11-1668**

**AEP ELMWOOD LLC ET AL.**                                          **SECTION "B"(4)**

## ORDER AND REASONS

Before the Court is Defendants AEP Elmwood LLC ("AEP Elmwood"), AEP River Operations, LLC ("AEP River"), AEP Resources, Inc. ("AEP Resources"), and American Electric Power Company, Inc.'s ("American Electric") (collectively "Defendants") Motion for Summary Judgment. (Rec. Doc. No. 90). In response, Plaintiff Anthony LeBlanc filed an opposition. (Rec. Doc. No. 105). Defendants filed a response thereto. (Rec. Doc. No. 109). Accordingly, and for the reasons articulated below, **IT IS ORDERED** that Defendants' Motion for Summary Judgment (Rec. Doc. No. 90) is **DENIED**.

Causes of Action and Facts of Case:

This case arises out of an accident that occurred at a barge-washing and repair facility on the eastern bank of the Mississippi River in Convent, Louisiana. The facility is owned and operated by Defendants AEP River Operations, LLC, and its

wholly owned subsidiary AEP Elmwood, LLC (the "AEP Facility"). (Rec. Doc. No. 90-4, at 2). The barge washer crews who work at the AEP Facility consist of AEP employees and laborers, such as Plaintiff, supplied to AEP by Diamond L Services. (Rec. Doc. No. 90-3, at 12-18). Once the barges arrive at the AEP Facility the barge washers are responsible for offloading any remaining cargo from the barges and cleaning out any residual material so that the barges can again be used for further product transport. (Id., at 3).

In September 2009, Plaintiff filled out a Diamond L employment application and returned it to the AEP facility. (Rec. Doc. No. 90-1, at 4). Plaintiff was hired as a barge washer soon thereafter. (Id.). At the facility, he participated in an employee orientation conducted by AEP supervisor Charlie Gabriel. (Id.). Thereafter, Plaintiff received various pieces of safety equipment from AEP including: steel toed rubber boots, a hard hat, a safety harness, goggles, a life jacket and a safety line. Additionally, hoses, broom and sweepers, ladders, blowers, suction lines and other equipment used by plaintiff to clean the barges were owned or provided by AEP. (Rec. Doc. No. 90-3, at 12-18).

Plaintiff worked at the AEP facility for approximately seven months from September 2009 to the date of his accident in May

2

2010. (Rec. Doc. No. 90-1, at 5). During that time he was not sent to any other location by Diamond L staff. (Id.). While working at the AEP facility, Plaintiff would arrive at the facility each morning and report to the on-site office where the barge washers received instruction for that particular day. (Id., at 6). The daily work and direction, including the specific duties and which barges would be cleaned by whom, were all laid out for the wash crews during that morning meeting. (Id.). Either AEP or Diamond L supervisors would conduct the morning meeting. (Id.).

To log his work hours, Plaintiff signed an AEP log book at the AEP facility.(Rec. Doc. No. 90-1, at 7). AEP provided Diamond L with a document detailing the time or hours worked by each of the barge washers, and Diamond L would issue payroll checks to the barge washers supplied to the AEP facility based on this time, Diamond L would subsequently invoice AEP for the services provided by Diamond L barge washers at AEP Facility, and AEP would then pay Diamond L. (Id., at 8). Additionally, AEP had the right to request the removal of any Diamond L barge cleaner, including Plaintiff, from the AEP facility, if it was dissatisfied in connection with the performance of his duties. (Rec. Doc. No. 90-1, at 7).

3

On or about May 21, 2010, Plaintiff was assigned to wash a vessel owned, operated and/or managed by Defendants. (Rec. Doc. No. 1-2, at 2). Plaintiff alleges that as a barge washer, he and other barge washers were required to stand on top of the temporarily-moored hopper barges and traverse the length of their fiberglass covers. (Rec. Doc. No. 105, at 3). The parties have presented deposition testimony suggesting that AEP River did not have an adequate fall protection system in place on its vessel for the barge washers performing that work prior to the Plaintiff's accident. (Id., ftnt 12). The accident occurred when the Plaintiff was standing on top of the barge near one of the hopper's access holds. (Rec. Doc. No. 105, at 4). AEP River employee Eric Johnson was on another barge manning the water hose spigot, and could not see the Plaintiff. (Id.). Mr. Johnson testified he thought that the Plaintiff had told him to turn the hose on, so he did, which caused the hose to knock the Plaintiff over, resulting in his fall. (Id.). The Plaintiff denies telling Mr. Johnson to turn the hose on. (Id.). The workers had no other way to communicate with one another as they were not provided radios. (Id.). Plaintiff was injured as a result of his fall and now seeks damages for those injuries. (Id.).

## Law and Analysis

A. Summary Judgment

Summary judgment is proper if the pleadings, depositions, interrogatory answers, and admissions, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). A genuine issue exists if the evidence would allow a reasonable jury to return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Although the Court must consider the evidence with all reasonable inferences in the light most favorable to the nonmoving party, the nonmovant must produce specific facts to demonstrate that a genuine issue exists for trial. *Webb v. Cardiothoracic Surgery Assocs. of N. Texas*, 139 F.3d 532, 536 (5th Cir. 1998). "[T]he issue of material fact required by Rule 56 to be present to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968). The moving party bears the initial responsibility of informing the

district court of the basis for its motion. *Celotex*, 477 U.S. at 323. The movant must point to "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* (citing Fed. R. Civ. P. 56). If and when the movant carries this burden, the nonmovant must then go beyond the pleadings and use affidavits, depositions, interrogatory responses, admissions, or other evidence to establish a genuine issue. *Matsushita Elec. Indus. Co. V. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Accordingly, conclusory rebuttals of the pleadings are insufficient to avoid summary judgment. *Travelers Ins. Co. v. Liljeberg Enter., Inc.*, 7 F.3d 1203, 1207 (5th Cir. 1993).

B. Employer Liability under the LHWCA

Under 33 U.S.C.A. § 905(a) of the Longshoremen and Harbor Workers' Compensation Act ("LHWCA"), "[t]he liability of an employer prescribed in section 904 of this title shall be exclusive and in place of all other liability of such employer to the employee." The Fifth Circuit had interpreted this provision to mean that "[w]orker's compensation under the LHWCA is the exclusive remedy for an employee against his employer because the Act bars all common law tort actions against the employer."

6

*Melancon v. Amoco Production Co.*, 834 F.2d 1238, 1243 (5th Cir. 1988). Borrowed employees are also covered by the LHWCA, entitling them to worker's compensation under this act and also barring common law tort actions against the borrowing employer. *Id.* In this case, Defendants contend that Plaintiff is a borrowed employee and thus their liability is limited to compensation under the LWHCA. Plaintiff contends that he is not a borrowed employer and thus liability is not limited to what is available under the LWHCA.

In *Ruiz v. Shell Oil Co.*, 314 F.2d 310, 312-13 (5th Cir. 1969), the Fifth Circuit set out nine factors to be used in determining whether an employee should be considered a borrowed employee of another: (1) Who has control over the employee and the work he is performing?; (2) Whose work is being performed?; (3) Was there an agreement, understanding, or meeting of the minds between the original and the borrowing employer?; (4) Did the employee acquiesce in the new work situation?; (5) Did the original employer terminate his relationship with the employee?; (6) Who furnished tools and place of performance?; (7) Was the new employment over a considerable length of time?; (8) Who had the right to discharge the employee?; (9) Who had the obligation to pay the employee? *Id.* The Court stated, however, that "no one of these factors, or any combination of them, is decisive, and no

7

fixed test is used to determine the existence of a borrowed-servant relationship." *Id.*

In the case at bar, although the evidence regarding borrowed-employee status seems weighted in favor of the Defendants, there is a minimally sufficient showing of material factual disputes on that issue from Plaintiff. Here, the first, third, fifth and seventh factors of the *Ruiz* test do not conclusively point to borrowed employee status. The Court will first discuss those factors.

**(1) Who has control over the employee and the work he is performing?**

Although no single factor or combination of factors is considered decisive, the control factor is often considered to be the central factor. *See Brown v. Union Oil Co. of California*, 984 F.2d 674, 676 (5th Cir. 1993). "In considering whether the power exists to control and direct a servant, a careful distinction must be made 'between authoritative direction and control, and mere suggestion as to details or the necessary co-operation, where the work furnished is part of a larger undertaking.'" *Ruiz*, 413 F.2d at 313 (quoting *Standard Oil Co. v. Anderson*, 212 U.S. 215, 222 (1909)). In the cases cited by Defendants, the courts found that the evidence supported a finding of control sufficient to favor borrowed employee status on a motion for summary

judgement where the original employer had **no** contact with the worker as he worked at the borrowing employer's work site. *See Melancon v. Amoco Production Co.*, 834 F.2d 1238, 1245 (5th Cir. 1992); *Capps v. N.L. Baroid-NL Indus., Inc.*, 784 F.2d 615, 617 (5th Cir. 1986); *Hudson v. Forest Oil Co.*, No. Civ. A 02-2225, 2003 WL 2004445 (E.D.La. June 2, 2003), aff'd 372 F.3d 742 (5th Cir. 2004). In *Brown v. Union Oil*, where the parties provided conflicting testimony about who had supervised the Plaintiff's work, the Fifth Circuit found that the evidence did not overwhelmingly support borrowed employee status. 984 F.2d at 677.

In the case at bar, Plaintiff had contact with Diamond L supervisors at the AEP facility and Diamond L supervisors were present at the facility on a daily basis. Plaintiff's deposition testimony indicates that each day the barge washers attended safety meetings where they were told where they would be working for the day. (Rec. Doc. No. 90-3, at 19). Plaintiff stated that the safety meeting and directions as to where to work were given by personnel from both AEP and Diamond L. (Id.). Additionally, Plaintiff testified that during the day either Diamond L or AEP supervisors would check in to see how things were going. (Id., at 28).

Charles Gabriel, an AEP River supervisor at the AEP facility, also stated in a deposition that Diamond L provided a

supervisor that was on site at the AEP Convent facility. (Rec. Doc. No. 105-1, at 2-3). Gabriel testified that AEP supervisors would tell Diamond L supervisors what tasks needed to be completed and that the Diamond L supervisor would then instruct Diamond L personnel about what they should do. (Rec. Doc. No. 105-1, at 3). Mr. Gabriel was not able to say definitely whether an AEP supervisor who wanted to correct the way a Diamond L worker was carrying out his duties would speak directly to that employee or go through a Diamond L supervisor. (Id., at 4). Additionally, Diamond L required that the workers it provided to AEP go through some form of Diamond L training prior to going to the AEP facility. (Rec. Doc. No. 105-1, at 11).

The deposition testimony does not establish the same level of exclusive control existed that the Fifth Circuit has previously found sufficient to support borrowed employee status. Thus, in this case, the control-factor of the *Ruiz* test does not support borrowed employee status.

**(3) Was there an agreement, understanding, or meeting of the minds between the original and the borrowing employer?**

In deciding this factor, courts have looked to contractual provisions and the behavior of the parties to determine whether an understanding existed. *See Brown*, 984 F.2d at 677. In this case, the parties have not submitted definitive evidence as to

the nature of the understanding between AEP and Diamond L. The parties have, however, submitted a copy of a Cleaning and Repair Master Service Agreement. (Rec. Doc. No. 105-3, at 11). The Agreement states that "[the] Contractor shall remain responsible for the payment of Louisiana Worker's Compensation benefits to its employees, and shall not be entitled to seek contribution for any such payments from Elmwood." (Id., at 17). The language appears to suggest that Diamond L was the Plaintiff's employer for the purposes of the LHWCA. However, the parties have not made any assertions as to what, if any, bearing this agreement may have on the third factor. Furthermore, no other contractual language was provided nor was there any deposition testimony related to the parties' understanding of the Plaintiff's status based on this agreement.

Some courts have looked to the level of control actually asserted by the alleged borrowing employer to determine this factor. *See Capps*, 784 F.2d at 617; *Melancon*, 834 F.2d at 1245. As previously discussed, the evidence presented does not establish that AEP exerted sole control over the Plaintiff. Thus, there remain genuine issues of material fact as to whether there was an agreement between AEP and Diamond L regarding Plaintiff's status.

11

**(5) Did the original employer terminate his relationship with the employee?**

In evaluating this factor, courts have emphasized examining "the lending employer's relationship with the employee while the borrowing occurs." *Brown*, 984 F.2d at 678. In *Brown*, the Fifth Circuit found that where there was evidence that the lending employer had engaged in some supervision of the employee and that the lending employer had the right to remove the employee from the alleged borrowing employer's work site at any time, this factor did not overwhelmingly support borrowed employee status. 984 F.2d, at 678-79. Conversely, in *Capps*, the Court found that borrowed employee status was supported where the original employer had **no** contact with, exercised **no** control over and placed **no** restrictions on the employee while in the service of the alleged borrowing employer. 784 F.2d at 618.

In this case, the deposition testimony submitted by both Plaintiff and Defendants establishes that Diamond L did not relinquish control over the workers it provided while they were working at the AEP work site. Plaintiff was given instruction by both AEP and Diamond L personnel. Furthermore, Diamond L retained the authority to remove the Plaintiff from the AEP facility at any time and reassign him to another job. Thus, the evidence

12

submitted regarding this factor does not point toward borrowed employee status.

> **(7) Was the new employment over a considerable length of time?**

In *Capps*, the Court stated that "[w]here the length of employment is considerable, this factor supports a finding that the employee is a borrowed employee; however, the converse is not true." 784 F.2d at 618. Courts have found that employment for a period of years supports borrowed employee status. *See Gaudet v. Exxon Corp.*, 562 F.2d 351, 358 (5th Cir. 1977); *Arboleda v. Elmwood Dry Dock & Repair, Inc.*, No. Civ. A. 98-1268, 2001 WL 111224, *5 (E.D.La. Feb. 7, 2001). Periods of approximately a month or less have been found to be neutral on borrowed employee status. *Brown*, 984 F.2d at 679; *Capps*, 784 F.2d at 618. Plaintiff LeBlanc worked at the AEP facility as a barge washer/cleaner for approximately seven months. (Rec. Doc. No. 90-1, at 2; 105-4, at 1). The Court finds this factor neutral on borrowed employee status.

The other factors of the *Ruiz* test support a finding of borrowed employee status and will be mentioned briefly. As to the second factor, Plaintiff was performing work AEP's work. As to the fourth factor, Courts have interpreted employee acquiescence in the new work place to mean that the employee understood what

13

the working conditions would be and continued to work under those conditions without complaint. *See Melancon*, 834 F.2d at 1245. In this case, Plaintiff worked at the AEP facility for seven months - giving him enough time to understand the work conditions. This is sufficient to support borrowed employee status. As to the sixth factor, AEP provided the place of work and all the equipment necessary for performance of the barge washing and all work was done at the AEP facility. While the employees brought in some of their own safety equipment, in the event that they did not bring the equipment to work, AEP could give them such equipment. This factor supports borrowed employee status. As to the eighth factor, in *Brown*, the Court found that an alleged borrowing-employer's right to terminate its own relationship with the alleged borrowed-employee was sufficient to support a finding of borrowed servant status even if the borrowing employer could not terminate the relationship between the employee and the original employer. 984 F.2d, at 679. This is the arrangement in the case at bar. Similarly, the ninth factor supports borrowed employee status. In *Brown*, the fact that payment of the employee was done through the direct employer but based on the time verification by the alleged borrowing-employer was enough to support borrowed employee status. 984 F.2d, at 679 (citing

*Alexander v. Chevron*, 806 F.2d 526, 528 (5th Cir. 1986)). This is the situation in the case at bar.

On balance, the evidence presented does not support a finding of borrowed employee status on summary judgment. Genuine issues of material fact remain as to several significant factors.

C. Negligence Claims Under 33 U.S.C. § 905(b)

In interpreting § 905(b), the Supreme Court in *Jones & Laughlin Steep Corp. v. Pfeifer*, stated that:

> [T]he first sentence of § 905(b) authorizes a longshoreman whose injury is caused by the negligence of a vessel to bring a separate action against such a vessel as a third party. The second sentence of § 5(b) makes it clear that such a separate action is authorized against the vessel even where there is no independent stevedore and the longshoreman is employed directly by the vessel owner.

462 U.S. 523, 530 (1983).

Thus, the fact of a worker being a borrowed employee does not preclude the employee from bringing an action against the owner, although he may also be an employer, for vessel negligence as an owner.

Defendants assert that two exceptions under 905(b) apply:

> (1) If such person was *employed by the vessel* to provide stevedoring services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing stevedoring services to the vessel.

(2) If such person was employed to provide shipbuilding, repairing, or breaking services and *such person's employer was the owner* . . . of the vessel, no such action shall be permitted . . . against the injured person's employer.

33 U.S.C.A. § 905(b)(emphasis added).

In the case at bar, the deposition testimony submitted demonstrates that there are genuine issues of material fact as to whether the accident was solely the result of a co-barge washers actions or also due to negligence on AEP's part for its alleged failure to install a fall-protection system. Additionally, Defendants have not established that the Plaintiff was employed to provide repair services to AEP. Regardless, Defendants arguments with respect to Plaintiff's ability to sue based on negligence of the vessel assume a finding of borrowed employee status. As the Court has already decided that it cannot find borrowed employee status on summary judgment, there is no need to rule on this issue at this time.

D. Dismissal of Out of State Holding Companies

The Fifth Circuit has held that "[t]he doctrine of limited liability creates a strong presumption that a parent corporation is not the employer of its subsidiary's employees." *Lusk v. Foxmeyer Health Corp.*, 129 F.3d 773, 778 (5th Cir. 1997). Evidence suggesting a level of control that departs significantly

from the ordinary relationship between a parent and its subsidiary is required to rebut this presumption. *Id.* Relevant factors pointing to the "existence of interrelated operations include evidence that the parent: (1) was involved directly in the subsidiary's daily decisions relating to production, distribution, marketing, and advertising; (2) shared employees, services, records, and equipment with the subsidiary; (3) commingled bank accounts, accounts receivable, inventories, and credit lines; (4) maintained the subsidiary's books; (5) issued the subsidiary's paychecks; or (6) prepared and filed the subsidiary's tax returns." *Id.* Plaintiff has presented no evidence suggesting that any of these factors are present in the case at bar. Thus, **IT IS ORDERED** that claims against the firms **AEP Resources and American Electric are Dismissed, without** prejudice.

Furthermore, for the reasons enumerated above, **IT IS ORDERED** that the Motion for Summary Judgment (Rec. Doc. No. 90) is **DENIED as to claims against remaining defendants.**

New Orleans, Louisiana, this 23rd day of May, 2013.

UNITED STATES DISTRICT JUDGE